**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQ.
PA Attorney ID: 319524
NJ Attorney ID: 125782014
1628 Pine Street
Philadelphia, PA 19103
Phone: 215-391-4790
Fax: 215-893-5288
Email: tim@dereksmithlaw.com
*Attorneys for Plaintiff Domonique Harvey*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOMONIQUE HARVEY,**<br>Plaintiff,<br>v.<br>**DOUGLAS A. COLLINS, Secretary, U.S. DEPARTMENT OF VETERANS AFFAIRS,**<br>Defendant. | Civil Action No.: _______________<br><br>**Jury Trial Demanded** |

## CIVIL ACTION COMPLAINT

Plaintiff Domonique Harvey (hereinafter "Plaintiff" or "Ms. Harvey"), by and through her attorneys, **DEREK SMITH LAW GROUP, PLLC**, as and for her Complaint in this action against Defendant Douglas A. Collins, Secretary of the United States Department of Veterans Affairs, in his official capacity (hereinafter "Defendant" or "the Agency"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for sexual harassment, hostile work environment, and unlawful retaliation arising out of Plaintiff's employment as a Cook at the Corporal Michael J. Crescenz Department of Veterans Affairs Medical Center in Philadelphia, Pennsylvania. Plaintiff brings her

claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., including the federal-sector provisions of 42 U.S.C. § 2000e-16.

2. On July 8, 2025, a coworker whom the Agency already knew to be a risk to women placed his arm around Plaintiff, kissed her on the forehead, and called her "beautiful." Plaintiff reported the assault in writing that same day. The Agency's response was to leave the harasser in place, to relocate Plaintiff, the victim, out of her work area, to permit the harasser to retire before serving the discipline the Agency itself had proposed, and then, approximately eight weeks after Plaintiff's first protected report, to terminate her employment without any progressive discipline whatsoever.

3. Plaintiff seeks compensatory damages, equitable relief including reinstatement and back pay, attorneys' fees, costs, and interest.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and pursuant to 42 U.S.C. § 2000e-16(c) and 42 U.S.C. § 2000e-5(f)(3).

5. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3), made applicable to federal-sector claims by 42 U.S.C. § 2000e-16(d), and pursuant to 28 U.S.C. § 1391(e), because the unlawful employment practices alleged herein were committed within this District; the employment records relevant to such practices are maintained and administered within this District; Plaintiff would have continued to work within this District but for the unlawful conduct alleged herein; and Plaintiff resides within this District.

6. Declaratory and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

7. This Court is authorized to award attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), as incorporated by 42 U.S.C. § 2000e-16(d), and compensatory damages and a trial by jury pursuant to 42 U.S.C. § 1981a.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff has exhausted all administrative remedies required as a condition precedent to this action pursuant to 42 U.S.C. § 2000e-16(c) and 29 C.F.R. Part 1614.

9. On September 30, 2025, Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor at the Agency's Office of Resolution Management ("ORM").

10. Informal counseling concluded on December 18, 2025, when Plaintiff and her counsel were issued a Notice of Right to File a Discrimination Complaint.

11. On December 31, 2025, Plaintiff filed a timely formal complaint of discrimination on VA Form 4939, docketed by the Agency as ORM Case No. 200H-642-2025-167223.

12. By Notice of Partial Acceptance dated February 26, 2026, the Agency accepted for investigation the claim of "whether Complainant was subjected to a hostile work environment based on Sex and Reprisal," as evidenced by three events: (1) the July 8, 2025 unwanted verbal and physical contact of a sexual nature by Food Service Worker Joseph Keenan, reported to Assistant Chief of Food and Nutrition Elizabeth Korb; (2) the on-or-about July 23, 2025 reassignment of Plaintiff out of her work area to the Community Living Center by Clinical Nutrition Manager Jennifer Hicks; and (3) the September 5, 2025 termination of Plaintiff's employment by Chief of Nutrition and Food Service Kelly McBride.

13. The Agency completed its investigation and, by Notice of Advisement of Rights dated August 4, 2026, transmitted the Report of Investigation to Plaintiff and advised her of her

right to elect a final agency decision or a hearing before an Administrative Judge of the Equal Employment Opportunity Commission.

14. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's formal complaint on December 31, 2025, and the Agency has taken no final action thereon. Plaintiff is therefore entitled to file this civil action pursuant to 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(b).

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

## PARTIES

16. Plaintiff Domonique Harvey is an adult individual residing in Pennsylvania. At all times relevant hereto, Plaintiff was an employee of the United States Department of Veterans Affairs within the meaning of 42 U.S.C. § 2000e-16(a).

17. Defendant Douglas A. Collins is the Secretary of the United States Department of Veterans Affairs and is sued solely in his official capacity as the head of the department pursuant to 42 U.S.C. § 2000e-16(c).

18. The United States Department of Veterans Affairs is an executive department of the United States within the meaning of 42 U.S.C. § 2000e-16(a). The Corporal Michael J. Crescenz Department of Veterans Affairs Medical Center, located at 3900 Woodland Avenue, Philadelphia, Pennsylvania 19104, is a facility of the Veterans Health Administration within the Department of Veterans Affairs and was Plaintiff's duty station at all relevant times.

19. At all times relevant hereto, Joseph Keenan was employed by the Agency as a Food Service Worker at the Corporal Michael J. Crescenz VA Medical Center. Elizabeth Korb was employed as Assistant Chief of Food and Nutrition; Jennifer Hicks as Clinical Nutrition Manager; Kelly McBride as Chief of Nutrition and Food Service; Vance Parris as Cook Supervisor; Michelle

Goetz as Acting Associate Director; and Patrick Farrell as a Human Resources Specialist. Each acted within the course and scope of his or her employment with the Agency except as otherwise alleged herein.

## FACTS

**A. Plaintiff's Employment with the Agency.**

20. About January 20, 2025, the Agency hired Plaintiff as a Cook, WG-6, in the Nutrition and Food Service department at the Corporal Michael J. Crescenz VA Medical Center.

21. Plaintiff's duties included the preparation and service of meals to veteran patients in accordance with prescribed therapeutic diets and Agency recipes and standards.

22. Plaintiff was serving a probationary period at all times relevant to this Complaint.

23. Plaintiff performed her duties satisfactorily. Her supervisor, Cook Supervisor Vance Parris, routinely approved her leave requests and forwarded them up the chain of command, and Plaintiff was regularly assigned to work at multiple kitchen locations within the facility.

**B. The July 8, 2025 Sexual Assault.**

24. On July 8, 2025, while Plaintiff was performing her duties, Food Service Worker Joseph Keenan approached her, placed his arm around her body, kissed her on the forehead, and called her "beautiful."

25. Plaintiff did not invite, welcome, or consent to Keenan's physical contact. The contact was unwelcome, offensive, humiliating, and of a sexual nature.

26. Keenan's conduct occurred because of Plaintiff's sex.

27. Plaintiff reported the assault immediately and in writing. On the same day, July 8, 2025, Plaintiff completed and submitted a Report of Contact to Assistant Chief of Food and Nutrition Elizabeth Korb.

28. Plaintiff's July 8, 2025 Report of Contact constituted protected activity under Title VII.

29. Plaintiff also reported the assault to the VA police and caused a police report to be generated.

30. In the course of the Agency's EEO investigation, Clinical Nutrition Manager Jennifer Hicks and Cook Supervisor Vance Parris each affirmed under oath that the July 8, 2025 events occurred as Plaintiff alleged. The Agency does not dispute that the assault occurred.

**C. The Agency Had Actual Notice of Keenan's Propensity Before July 8, 2025.**

31. Before July 8, 2025, the Agency knew that Joseph Keenan had engaged in inappropriate conduct toward women at the facility.

32. Jennifer Hicks testified under oath that she was informed Keenan had previously received discipline for inappropriate behavior involving a female VA patient. Hicks separately confirmed under oath, in response to a direct question whether she was aware of any previous complaints against Keenan, that such a complaint had been made, and that a female patient had reported to her nurse that Keenan behaved inappropriately toward her while delivering a meal tray.

33. The Agency therefore had actual knowledge, before Keenan ever touched Plaintiff, that Keenan posed a risk of sexual misconduct toward women in the facility.

34. Notwithstanding that knowledge, the Agency continued to employ Keenan in a position affording him regular, unsupervised contact with female employees and female patients, and took no measures to protect Plaintiff or other women from him.

**D. The Harassment Continued After Plaintiff's Report, and the Agency's Response Was Neither Prompt Nor Effective.**

35. After Plaintiff's July 8, 2025 report, the Agency permitted Keenan to remain in the workplace and in proximity to Plaintiff.

36. Keenan thereafter continued to target Plaintiff. He waited for her at the loading dock in the mornings, followed her, stared at her, and repeatedly intruded into her physical space.

37. Cook Supervisor Vance Parris admitted under oath that he personally observed Keenan staring in Plaintiff's direction in the period following her report and before she was moved out of her work area.

38. Approximately two weeks elapsed after Plaintiff's report before the Agency took any action, during which time Keenan's harassment of Plaintiff continued on a near-daily basis.

39. The Agency proposed a suspension of Keenan but never imposed it. Acting Associate Director Michelle Goetz confirmed under oath that Keenan was to receive a disciplinary action but elected to retire before the discipline was served, effective August 4, 2025.

40. Keenan thus departed the Agency with no discipline served and no consequence for his conduct, while Plaintiff was relocated, surveilled, and ultimately terminated.

**E. The Agency Removed the Victim Rather Than the Harasser.**

41. On or about July 22 and 23, 2025, Clinical Nutrition Manager Jennifer Hicks informed Plaintiff that Plaintiff would be moved out of her work area to the Community Living Center ("CLC").

42. Hicks stated that the reassignment was being made "in lieu of the situation with Joe," expressly tying the adverse action to Plaintiff's protected report of sexual harassment.

43. Plaintiff was relocated for four days. Keenan was not relocated.

44. Every responsible management official confirmed under oath that the July 23, 2025 reassignment occurred as alleged and that its purpose was to separate Plaintiff from Keenan.

45. The reassignment was materially adverse to Plaintiff. It removed her from her established work area and assignment, singled her out as the party displaced by her own complaint, and communicated to her and to her coworkers that the burden of Keenan's misconduct would be borne by his victim.

46. Hicks further told Plaintiff that the decision to move her had been made jointly by Hicks and the union, and that Keenan had been suspended. Plaintiff understood both representations to be untrue. Keenan was in fact on vacation, not suspension, and Plaintiff promptly contacted the union directly.

47. On July 26, 2025, at approximately 8:02 p.m., Plaintiff emailed Acting Associate Director Michelle Goetz, reporting the sexual assault and harassment by Keenan, reporting that Keenan had continued working and continued to harass her, reporting that her supervisor had witnessed the conduct, reporting that she had been relocated rather than Keenan, stating her belief that Keenan was a repeat offender against both employees and veteran patients, and requesting assistance. This email constituted further protected activity.

**F. Intervening Antagonism and the Manufactured Paper Trail.**

48. Following Plaintiff's protected activity, the Agency's treatment of Plaintiff changed markedly.

49. Supervisors began personally stationing themselves at the entrance to record Plaintiff's arrival times, a function ordinarily performed by the department timekeeper. Plaintiff lived less than two miles from the facility and was rarely late.

50. Plaintiff received sudden write-ups for conduct that had not previously drawn discipline, including a citation for failing to tag her cart, which Plaintiff answered by marking her cart on all four sides in permanent marker, and a citation for burnt macaroni and cheese, which Plaintiff disputed on the ground that she had followed the Agency's own recipe and that the photograph offered as proof did not depict her work.

51. Plaintiff's six-month evaluation abruptly surfaced criticisms concerning her "language" and "music" that had never previously been raised with her.

52. Michelle Goetz's sworn affidavit dates a purportedly documented conduct incident to July 23, 2025, the very day of Plaintiff's retaliatory reassignment.

53. On August 25, 2025, coworker Steffan Sciulli said to Plaintiff in a hostile tone, "Here comes Mrs. Evil Girl," as she walked past. When Plaintiff told Sciulli she did not wish to interact with him, Sciulli escalated the exchange and Plaintiff walked away.

54. In late August 2025, Plaintiff reported Sciulli's conduct to Jennifer Hicks and asked Hicks directly whether management was "looking for a reason to fire" her. This report constituted further protected activity.

**G. The September 5, 2025 Termination.**

55. On September 4, 2025, Plaintiff requested the use of sick leave in connection with her daughter's medical appointment. Night supervisor Vanessa King approved the request.

56. Plaintiff completed her meal service, provided a doctor's note, and offered to enter her time. Jennifer Hicks told Plaintiff not to worry about the time entry, explaining that time "goes in Thursdays" and could be entered the following Monday.

57. The following morning, September 5, 2025, at approximately 10:00 a.m., Chief of Nutrition and Food Service Kelly McBride terminated Plaintiff's employment.

58. McBride terminated Plaintiff on the advice and recommendation of Human Resources Specialist Patrick Farrell.

59. Plaintiff received no write-up, suspension, or other progressive disciplinary step for the conduct the Agency now cites as the basis for her termination, notwithstanding that the Agency maintained a practice of progressive discipline.

60. The abruptness of the termination, occurring the morning after a supervisor had expressly excused the very absence and time-entry issue the Agency would later invoke, supports the inference that the decision had been made in advance and that the stated rationale was pretextual.

61. The Agency has given shifting and inconsistent explanations for Plaintiff's termination. The termination letter stated that Plaintiff was unfit for government employment. In the paperwork the Agency submitted in connection with Plaintiff's claim for unemployment compensation, however, the Agency stated that the reason for the separation was "Termination Under Executive Order, Strengthening Probationary Periods." The Agency's inability to give a single consistent account of why it terminated Plaintiff is evidence that its stated reasons are pretextual.

62. Plaintiff was terminated approximately eight weeks after her first protected report of July 8, 2025, and within days of her late-August protected report to Hicks.

**H. Disparate Treatment of Comparators.**

63. Coworker Steffan Sciulli was alleged to have used cocaine and consumed alcohol on shift, to have behaved belligerently toward women, and to have falsely accused Plaintiff of threatening his life. Upon information and belief, Sciulli was not terminated.

64. Coworker Adjitin (Paul) Sogo removed food from Plaintiff's cart, interfering with her meal service. Jennifer Hicks admitted under oath that no paperwork or paper trail documented Sogo's conduct and that the matter was resolved with a verbal apology.

65. Upon information and belief, staff cooked personal meals on Agency equipment with the knowledge of supervisors and without discipline.

66. Joseph Keenan, who committed a sexual assault against Plaintiff and who had previously been disciplined for inappropriate conduct toward a female patient, was permitted to retire without serving the discipline the Agency had proposed.

67. The Agency thus terminated the victim of a sexual assault during her probationary period without progressive discipline, while permitting her assailant and other male comparators to escape comparable consequences.

68. The above are just some examples of some of the discrimination and retaliation to which Defendant subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

69. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

70. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**I. Damages.**

71. As a direct and proximate result of the Agency's unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including without limitation lost wages, lost benefits, lost future earning capacity, emotional pain and suffering, anxiety, humiliation, embarrassment, loss of self-esteem, loss of enjoyment of life, and other compensable harm.

## CAUSES OF ACTION

### COUNT I
### Hostile Work Environment Based on Sex in Violation of Title VII
### 42 U.S.C. § 2000e-16(a); standards of 42 U.S.C. § 2000e-2(a)

72. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth at length herein.

73. Section 717 of Title VII, 42 U.S.C. § 2000e-16(a), provides that all personnel actions affecting employees in executive agencies shall be made free from any discrimination based on sex.

74. Title VII prohibits sex-based harassment that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

75. Plaintiff is female and is a member of a protected class.

76. Plaintiff was subjected to intentional discrimination because of her sex, including unwanted physical contact of a sexual nature, unwanted verbal conduct of a sexual nature, and a sustained course of following, staring, and physical intrusion by Joseph Keenan.

77. The conduct was unwelcome. Plaintiff neither invited nor consented to it, and she reported it in writing on the day it occurred.

78. The conduct was severe or pervasive. Unwanted physical contact of a sexual nature, an arm placed around Plaintiff's body and a kiss to her forehead, is severe standing alone. It did not stand alone: it was followed by approximately two weeks of near-daily following, loading-dock ambushes, staring, and intrusion into Plaintiff's physical space, conduct corroborated by Cook Supervisor Vance Parris's sworn admission that he observed Keenan staring at Plaintiff.

79. The conduct detrimentally affected Plaintiff and would detrimentally affect a reasonable person in Plaintiff's position.

80. Because Keenan was Plaintiff's coworker rather than her supervisor, the Agency is liable for the hostile work environment if it knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

81. The Agency had actual knowledge of the harassment. Plaintiff reported the July 8, 2025 assault in writing on the same day to Assistant Chief of Food and Nutrition Elizabeth Korb, a management-level official, and thereafter reported the continuing harassment to Acting Associate Director Michelle Goetz, to the VA police, and to the union.

82. The Agency further had actual knowledge, prior to the assault, that Keenan had previously been disciplined for inappropriate conduct toward a female VA patient, and thus knew or should have known that Keenan posed a risk of sexual misconduct toward women in the facility.

83. The Agency's remedial response was neither prompt nor appropriate. The Agency left Keenan in the workplace for approximately two weeks while his harassment of Plaintiff continued; relocated Plaintiff, the victim, rather than Keenan, the harasser; proposed but never imposed discipline on Keenan; and permitted Keenan to retire on August 4, 2025 without serving any discipline.

84. A remedial measure that removes the victim rather than the harasser, and that permits the harasser to depart without consequence, is not appropriate remedial action within the meaning of Title VII.

85. The Agency's unlawful conduct was intentional and was undertaken with malice or with reckless indifference to Plaintiff's federally protected rights.

86. As a direct and proximate result of the Agency's violation of Title VII, Plaintiff has suffered and continues to suffer the damages set forth herein, and is entitled to all remedies available under Title VII, including compensatory damages pursuant to 42 U.S.C. § 1981a, back

pay, front pay, reinstatement, attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), as incorporated by 42 U.S.C. § 2000e-16(d), and pre- and post-judgment interest.

**COUNT II**
**Retaliation in Violation of Title VII**
**42 U.S.C. § 2000e-16(a); standards of 42 U.S.C. § 2000e-3(a)**

87. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth at length herein.

88. Title VII prohibits retaliation against an employee because she has opposed a practice made unlawful by Title VII or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. This prohibition extends to federal employees pursuant to 42 U.S.C. § 2000e-16.

89. Plaintiff engaged in protected activity, including without limitation: (a) her July 8, 2025 written Report of Contact to Assistant Chief Elizabeth Korb reporting Keenan's sexual assault; (b) her report of the assault to the VA police; (c) her July 26, 2025 email to Acting Associate Director Michelle Goetz reporting the assault, the continuing harassment, and the Agency's inadequate response; (d) her contact with the union regarding her treatment; and (e) her late-August 2025 report to Jennifer Hicks concerning coworker Steffan Sciulli and her inquiry whether management was seeking a pretext to terminate her.

90. Plaintiff held a reasonable, good-faith belief that the conduct she opposed violated Title VII.

91. The Agency had actual knowledge of Plaintiff's protected activity at all relevant times.

92. The Agency subjected Plaintiff to materially adverse actions because of her protected activity, including without limitation: (a) the on-or-about July 23, 2025 reassignment of

Plaintiff out of her work area to the Community Living Center; (b) heightened surveillance of Plaintiff's arrival times by supervisors; (c) the issuance of pretextual write-ups and a negative six-month evaluation; and (d) the September 5, 2025 termination of Plaintiff's employment.

93. Each such action well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

94. A causal connection exists between Plaintiff's protected activity and the Agency's adverse actions, as established by, among other things, (a) the express statement of Jennifer Hicks that Plaintiff's reassignment was being made "in lieu of the situation with Joe," directly linking the adverse action to Plaintiff's protected report; (b) the close temporal proximity between Plaintiff's July 8, 2025 report and the July 23, 2025 reassignment, a span of approximately two weeks; (c) the close temporal proximity between Plaintiff's protected activity and her September 5, 2025 termination, a span of approximately eight weeks from her initial report and days from her late-August report; (d) a pattern of intervening antagonism, including heightened surveillance, sudden write-ups, and newly surfaced evaluation criticisms; (e) the Agency's departure from its practice of progressive discipline; and (f) the disparate treatment of Plaintiff relative to male comparators, including her assailant.

95. The Agency's proffered reasons for the adverse actions taken against Plaintiff are pretextual, false, and unworthy of credence. Among other things, the Agency terminated Plaintiff the morning after a supervisor had expressly approved the leave and excused the time-entry issue it later invoked; the Agency's documentation of Plaintiff's purported deficiencies commenced on the very day of her retaliatory reassignment; the Agency imposed no progressive discipline before terminating her; and the Agency has given shifting and inconsistent explanations for the termination, stating in the termination letter that Plaintiff was unfit for government employment

while reporting to the unemployment compensation authorities that she had been separated under an Executive Order strengthening probationary periods.

96. The Agency's unlawful conduct was intentional and was undertaken with malice or with reckless indifference to Plaintiff's federally protected rights.

97. As a direct and proximate result of the Agency's violation of Title VII, Plaintiff has suffered and continues to suffer the damages set forth herein, and is entitled to all remedies available under Title VII, including compensatory damages pursuant to 42 U.S.C. § 1981a, back pay, front pay, reinstatement, attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), as incorporated by 42 U.S.C. § 2000e-16(d), and pre- and post-judgment interest.

## COUNT III
**Retaliatory Hostile Work Environment in Violation of Title VII**
**42 U.S.C. § 2000e-16(a); standards of 42 U.S.C. § 2000e-3(a)**

98. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth at length herein.

99. Following and because of Plaintiff's protected activity, the Agency subjected Plaintiff to a hostile work environment that was severe or pervasive enough to dissuade a reasonable worker from making or supporting a charge of discrimination.

100. The retaliatory hostile work environment included, without limitation, permitting Plaintiff's assailant to remain in the workplace and to continue following, staring at, and intruding upon her after she reported him; displacing Plaintiff from her work area while leaving her assailant in place; misrepresenting to Plaintiff that her displacement was a joint decision with the union and that her assailant had been suspended when he was in fact on vacation; subjecting Plaintiff to heightened supervisory surveillance of her arrival times; issuing sudden and pretextual write-ups;

surfacing new criticisms in her six-month evaluation; and permitting coworker hostility, including Steffan Sciulli's August 25, 2025 remark, to continue without correction.

101. Each of the foregoing acts was part of the same unlawful employment practice, and at least one act contributing to the hostile work environment occurred within the applicable limitations period.

102. The Agency knew of the retaliatory hostile work environment and failed to take prompt and appropriate corrective action; indeed, the Agency's own management officials created and perpetuated it.

103. As a direct and proximate result of the Agency's violation of Title VII, Plaintiff has suffered and continues to suffer the damages set forth herein, and is entitled to all remedies available under Title VII, including compensatory damages pursuant to 42 U.S.C. § 1981a, back pay, front pay, reinstatement, attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), as incorporated by 42 U.S.C. § 2000e-16(d), and pre- and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Domonique Harvey respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, and award the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.;

b. Back pay, including lost wages, lost overtime, lost leave, lost retirement and Thrift Savings Plan contributions and accruals, lost health and life insurance benefits, and all other lost benefits of employment, together with interest thereon;

c. Reinstatement of Plaintiff to her former position or to a comparable position at the Corporal Michael J. Crescenz VA Medical Center or another facility, with restoration of seniority, benefits, and creditable service, or, in lieu thereof, an award of front pay in an amount to be determined at trial;

d. Compensatory damages for emotional pain and suffering, anxiety, humiliation, embarrassment, inconvenience, mental anguish, loss of self-esteem, and loss of enjoyment of life, in an amount to be determined at trial and subject to the limitations of 42 U.S.C. § 1981a(b)(3);

e. An order directing the Agency to expunge from Plaintiff's Official Personnel Folder and all related records the September 5, 2025 termination action and all disciplinary and evaluative documents issued in retaliation for her protected activity;

f. Injunctive relief requiring the Agency to institute and carry out policies, practices, training, and programs that provide equal employment opportunity and that eradicate the effects of its past and present unlawful employment practices;

g. Reasonable attorneys' fees, costs, expert witness fees, and expenses pursuant to 42 U.S.C. § 2000e-5(k), as incorporated by 42 U.S.C. § 2000e-16(d);

h. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

i. Such other and further relief as this Honorable Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and 42 U.S.C. § 1981a(c), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 21, 2026

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**
*/s/ Timothy J. Prol*
Timothy J. Prol, Esquire
PA Attorney ID: 319524
Derek Smith Law Group, PLLC
1628 Pine Street
Philadelphia, PA 19103
T: 215-391-4790
Email: tim@dereksmithlaw.com
*Attorney for Plaintiff Domonique Harvey*